UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| THOMAS H. BLAKELY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 07-436-DCR |
| ) | |
| V. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | **MEMORANDUM OPINION** |
| of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Thomas H. Blakely ("Blakely") and Defendant Michael J. Astrue, Commissioner of Social Security (the "Commissioner"). [Record Nos. 6 and 7] Through this action, Blakely seeks to reverse the decision of an administrative law judge ("ALJ") concluding that he was not entitled to a Period of Disability and Disability Insurance Benefits ("DIB"). However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Blakely.

**I.   BACKGROUND**

Blakely protectively filed an application for a Period of Disability and DIB on January 24, 2005. The claim was denied initially and upon reconsideration. Thereafter, Blakely requested a hearing before an ALJ. On August 23, 2006, a hearing was conducted before ALJ

-1-

Joan A. Lawrence in Middlesboro, Kentucky. During the hearing, the ALJ heard testimony from Blakely and Dr. James H. Miller, a vocational expert. Thereafter, the ALJ issued a decision denying benefits to Blakley. [Transcript ("Tr."), pp. 14-22] The ALJ concluded that Blakely retained the residual functional capacity to lift 50 pounds occasionally, 25 pounds frequently, and sit, stand, or walk about 6 hours of an 8 hour workday. [Tr., p. 19] Additionally, the ALJ found that Blakely could climb ladders, ropes, and scaffolds and reach in all directions occasionally, with limited ability to deal with work stress. Blakely's request for review was denied by the Appeals Council on November 9, 2007. [Tr., pp. 7-9]

As of the date of the ALJ's decision, Blakely was a 47 year-old individual with a high school education. [Tr., p. 21] He alleges disability beginning February 11, 2004, due to low back pain, residual shoulder problems, and mood disorders. [Tr., p. 14] He has past work experience as a roof bolter in underground coal mines. After reviewing the record and the testimony presented at the hearing, the ALJ concluded that Blakely suffers from the following severe impairments: osteoarthritis, mood and anxiety disorders, stage II black lung, and residuals of cervical disc with allografting and plating. However, the ALJ found that Blakely did not suffer from any impairments or combination of impairments that would qualify him as disabled, as defined in the Social Security Act and regulations, from February 11, 2004, through the date of the decision. [Tr., p. 22]

**II.    LEGAL STANDARD**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment

of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, a claimant must show that he suffers from a severe impairment. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual function capacity ("RFC") and relevant past work to determine if he can do past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of this analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education and past work experience to determine if he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of

proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Servs.*, 46 F.3d 552,

555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.   DISCUSSION

Blakely asserts that the Commissioner's decision denying benefits is not supported by substantial evidence for three reasons. First, he alleges that the ALJ erred in finding that he was capable of performing a range of medium work, including lifting 50 pounds frequently and 25 pounds occasionally. In reaching this conclusion, Blakely contends that the ALJ improperly rejected the opinions of Dr. Ben Kibler and Dr. David Muffly, while adopting the recommendations of the two non-examining state agency physicians. Second, Blakely contends that the ALJ should have found that he suffered from a severe impairment as a result of his carpal tunnel syndrome. Finally, Blakely contends that the ALJ failed to include all appropriate mental limitations in his RFC, including "poor coping skills and abnormal responses to work pressure." [Record No. 6, p. 15] Blakely seeks an order remanding this matter for further proceedings.

At the hearing before the ALJ, Blakely testified that he was injured in a February 2004 mining accident when a hanging pump line filled with water blew apart and hit him across his shoulder and neck. Since that time, Blakely has undergone two surgeries, an anterior cervical discectomy with allografting and plating in July 2004 and an acromioclvicular joint repair in May 2005. Dr. Kibler of the Lexington Orthopedic Clinic administered his follow-up care

through February 2006. On December 18, 2005, Dr. Kibler opined that Blakely "should do no more than 20 pounds lifting to his waist and no overhead lifting on a repetitive basis." [Tr., p. 383] However, in a follow-up exam on February 16, 2006, Dr. Kibler noted that Blakely showed "excellent strength in external rotation with arm down at the side" and that "[h]is x-rays do not show any abnormality of the AC joint or of the glenohumeral joint." [Tr., p. 381] Dr. Kibler concluded that "[h]e may very well have some problems with the rotator cuff and AC joint but these are relatively minimal and are not giving him his functional disability." [*Id.*]

In May 2006, Blakely also saw Dr. Muffly for a consultative examination. In his report, Dr. Muffly reviewed the functional capacity examination from 2005 and adopted the recommendations of no overhead lifting and no more than 20 pounds from floor to waist level. Dr. Muffly also opined that "with the combination of bilateral carpal tunnel syndrome I think he is totally disabled." [Tr., p. 387] Finally, Dr. Muffly completed a medical assessment on June 8, 2006, incorporating the 20 pound limitation, as well as the following: that the claimant not sit, stand, or walk for more than three hours in an eight hour workday, no more than occasional stooping, crouching, kneeling, or crawling, never climbing or balancing, and restrictions on reaching, handling, feeling, pushing, pulling, moving machinery, and heights. [Tr., pp. 398-99]

Two state agency physicians also reviewed Blakely's claims and the medical evidence. They determined that he could lift 50 pounds occasionally, 25 pounds frequently, and sit, stand, or walk for six hour of an eight hour workday. Additionally, the state agency physicians found that Blakely could climb ladders, ropes and scaffolds occasionally, but that he would be limited

in his ability to reach in all directions. [Tr., pp. 360-64, 370-76] The agency physicians also adopted the opinion of Dr. Mark Burns, who examined Blakely in June 2005. Dr. Burns found that Blakely "has ability to perform activities involvingسسي sitting, standing, moving about, lifting carrying, handling objects, hearing, seeing, speaking, and traveling" and that his physical and orthopedic examination were "within normal limits with the exception of decreased flexion and abduction involving the left shoulder." [Tr., p. 286] Dr. Burns opined that Blakely "will obtain full range of motion after continued intense physical therapy." [*Id.*]

After reviewing all the evidence in the record, including the testimony presented at the hearing, the ALJ adopted the opinions of the two state agency physicians and Dr. Burns and specifically rejected the opinions of Dr. Kibbler and Dr. Muffly as to Blakely's RFC and disability. The ALJ noted that Blakely's subjective complaint of pain were disproportionate to the medical evidence in the record. In particular, the ALJ stated that,

> [d]espite a remote history of a cervical discectomy and acromioclavicular joint repair, his clinical examinations were largely unremarkable for any neurological abnormalities, except for subjective complaints of pain in the neck, shoulder, and arm. He was treated with pain medication for his upper extremity pain, but has required no further surgery or physical therapy. He demonstrated no significant musculoskeletal abnormalities and only minimal decreased flexion and abduction involving the left shoulder, which would likely improve with intense physical therapy. The claimant was not referred to a pain clnic and has required no in-patient hospital care in spite of the allegations of quite limiting pain.

[Tr., p. 20] Further, regarding the opinions of Dr. Kibbler and Dr. Muffly, the ALJ found that,

> [a]lthough a treating physician indicated the claimant should not do more than 20 pounds lifting to his waist and no overhead lifting on a repetitive basis, the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who

> might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence in the record, as in the current case.
>
> The undersigned assigns no weight to the generalized statements of disability by one time independent examiners Drs. Muffly and Belew. Said conclusory statements are inconsistent with the claimamt's benign clinical examinations, objective tests, and conservative treatment history. . . . It is emphasized that the claimant underwent these physical and mental examinations that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.

[Tr., p. 20]

While some deference is accorded the findings of treating physicians, "[u]ltimately, of course, the determination of disability is the prerogative of the Secretary, not the treating physician." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *see also* 20 C.F.R. §§ 404.1527(e)(2) ("We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . ., your residual functional capacity . . ., or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.").

The "opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings, and is not contradicted by substantial evidence to the contrary. The Commissioner may reject the opinion of a treating physician where good reasons are found to

do so in the record." *Hare v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 773, 776 (6th Cir. 2002). In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004), the Sixth Circuit noted that a treating physician's opinion can be discounted when: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques; (2) it is inconsistent with substantial evidence in the record; (3) it does not identify the evidence supporting its finding; and (4) if it fares poorly when applying the factors listed in 20 C.F.R. §§ 404.1527(d)(2) including the nature and extent of the relationship, the supportability of the medical source's opinion (such as through medical signs and laboratory findings), and the consistency of the opinion. Further, it is well-established that an "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

In the present case, this Court agrees with the ALJ's assessment of the differing opinions in the record and finds that her decision denying benefits is supported by substantial evidence. The ALJ properly rejected the functional capacity examination adopted by Dr. Kibler and Dr. Muffly because it was not supported by the clinical evidence in the record, including Dr. Kibler's own notes from February 2006. At that time, Dr. Kibler noted that Blakely showed "excellent strength in external rotation with arm down at the side" and that "[h]is x-rays do not show any abnormality of the AC joint or of the glenohumeral joint." [Tr., p. 381] Dr. Kibler concluded that "[h]e may very well have some problems with the rotator cuff and AC joint but these are relatively minimal and are not giving him his functional disability." [*Id.*] These statements

clearly contradict his earlier assessment of no more than 20 pounds lifting from floor to waist and no overhead lifting.

Additionally, the ALJ properly rejected one-time examiner Dr. Muffly's conclusory statement of "disability" in his June 2006 report. As noted above, whether a claimant is disabled within the meaning of the Social Security Act and regulations involves a sequential process and that determination is reserved to the Commissioner. *Harris*, 756 F.2d at 435. Opinions of both treating and examining sources may be discounted when they are not supported by clinical findings, especially when there is substantial evidence to the contrary in the record. Here, the opinions of Dr. Burns, the two state agency physicians, and Dr. Kibler's notes from February 2006 all support the ALJ's decision denying benefits, and it cannot be said that her decision is not supported by substantial evidence.

Blakely also contends that the ALJ erred in failing to consider his carpal tunnel syndrome as a severe impairment. In support, Blakely points to Dr. Steven P. Kiefer's diagnosis of "bilateral carpal tunnel syndrome" on June 4, 2004. Dr. Kiefer later prescribed wrist splints in December, 2004, in response to Blakeley's complaints of persistent symptoms.

Initially, the Court notes that Blakely was not diagnosed with carpal tunnel syndrome until several months after his work-related accident, in June 2004. [Tr., p. 284] In his June 2005 evaluation, Dr. Burns noted that Blakely had the ability to handle objects and had "normal gross manipulation and grip strength." [Tr., p. 286] Dr. Burns' examination showed "no clubbing cyanosis or edema . . . [and] no deformities, redness or tenderness." [Tr., p. 284] Further, Dr.

Burns' report notes that Blakely "states he is now wearing wrist splints bilaterally with fair relief." [Tr., p. 285]

In considering the severity of a claimant's medical impairment, an ALJ must determine whether the impairment or a combination of impairments, "significantly limits" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include "the abilities and aptitudes necessary to do most jobs," such as physical functions; capacities for seeing, hearing and speaking; understanding, carrying out and remembering simple instructions; and use of judgment. 20 C.F.R. § 404.1521(b). Conversely, a non-severe impairment "is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 691 (6th Cir. 1985) (citations omitted).

Here, Blakely contends that the ALJ erred in finding that his bilateral carpal tunnel syndrome was not a severe impairment. However, the ALJ did find that Blakely suffered from other severe impairments. In *Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240 (6th Cir. 1987), the Sixth Circuit addressed and rejected the contention that an ALJ's failure to find severity as to one impairment constitutes reversible error where the ALJ finds other severe impairments and proceeds with the sequential analysis. In that case, the Court held:

> Maziarz argues that the Secretary erred in failing to find that his cervical condition constitutes a severe impairment. We find it unnecessary to decide this question. According to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation as outlined above. In the instant case, the Secretary found that Maziarz suffered from the severe impairment of coronary artery disease,

> status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.

*Id.* at 244.

In the present case, the ALJ found that Blakely suffered from the following severe impairments: osteoarthritis, mood and anxiety disorders, stage II black lung, and residuals of cervical disc with allografting and plating. As noted in *Maziarz*, even if the ALJ erred in not including Blakely's alleged carpal tunnel syndrome among his "severe" impairments, the error was harmless because the ALJ found that Blakely suffered from other severe impairments and continued with his analysis.

Finally, Blakely's argument regarding the mental limitations in his RFC also fails to warrant any relief under the circumstances presented. Blakely contends that the ALJ failed to explicitly accept or reject the opinion of Dr. Raza and that, "[i]f it was, in fact, her intention to accept it, poor coping skills and abnormal responses to work pressure were improperly omitted from the RFC." [Record No. 6, p. 15] Blakely asserts that the opinion of one-time examiner, Dr. Belew, supports including stress-related limitations in Blakely's RFC.

However, contrary to Blakely's argument, the ALJ did include mental limitations in the RFC as a result of Blakely's anxiety and mood disorders. The ALJ specifically noted, in both his decision and his hypothetical to the vocational expert, that Blakely "would have limitations in his ability to deal with work stresses." [Tr., pp. 19, 452] This limitation is entirely consistent

with Dr. Raza's recommendations.  Accordingly, Blakely's argument in this regard is without merit.

### IV.    CONCLUSION

Because the ALJ's assessment of Blakely's RFC and her decision denying benefits are supported by substantial evidence in the record, it is hereby **ORDERED** as follows:

(1)    Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 7] is **GRANTED**;

(2)    Plaintiff Thomas H. Blakely's Motion for Summary Judgment [Record No. 6] is **DENIED**;

(3)    The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 12th day of August, 2008.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge